STATE of Alaska, Appellant,

v.

David ELUSKA, Appellee.

No. A–210.

Court of Appeals of Alaska.

April 12, 1985.

Sarah Elizabeth McCracken, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Michael J. Wall, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

The state appeals the district court's dismissal of misdemeanor charges against David Eluska. Eluska was charged with possessing illegally taken game in violation of 5 AAC 81.320(6)[1] and 5 AAC 81.140(a).[2] Eluska sought dismissal of the charges on the ground that 5 AAC 81.320(6) was unenforceable against him because he was a subsistence hunter and the regulation failed to adequately provide for subsistence hunting. *See* AS 16.05.255(b); AS 11.81.-220; AS 44.62.030.[3] Acting District Court Judge Roy H. Madsen found that the deer was taken to satisfy the subsistence needs of Eluska and his family and that the regulations which prohibited him from taking the deer failed to provide adequately for subsistence uses as required by the enabling statute. AS 16.05.255(b). Consequently he concluded that the regulation was invalid as applied to Eluska and dismissed the case. The state appeals, contending that (1) adequate regulations had been promulgated providing for subsistence use of game; (2) Eluska lacked standing to challenge state game regulations because his possession of game was unlawful even if taken for subsistence uses; and (3) Eluska lacked standing to challenge the state game laws because he had not exhausted his administrative remedies. (This last argument was first made during oral argument.) We agree with Judge Madsen's conclusion that the state regulations applicable to Game Unit 8 do not on their face make adequate provision for subsistence hunting. We therefore recognize "subsistence use" as a defense to the charges brought against Eluska. In light of the substantial uncertainty regarding the proper resolution of the issues presented in this case at the time it was argued to the trial court, we have decided to remand the case to the trial court to give the parties an opportunity to litigate Eluska's sub-

---

1. For the 1982–83 season, 5 AAC 81.320(6) limited the deer season in Game Unit 8 to the period between August 1 and January 31 and imposed the following bag limits:

   | Aug. 1–Jan. 31 | Seven deer; however, antlerless deer may be taken only from September 15–January 31 |
   |---|---|

2. 5 AAC 81.140(a) provides:
   *Possession and Transportation.* (a) No person may possess, transport, or place into the possession of another, any game or parts of game that the person has taken in violation of AS 16 or a regulation promulgated thereunder.

3. Alaska Statute 44.62.030 provides:
   *Consistency between regulation and statute.* If, by express or implied terms of a statute, a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute.
   Alaska Statute 11.81.220 provides:
   *All offenses defined by statute.* No conduct constitutes an offense unless it is made an offense
   (1) by this title;
   (2) by a statute outside this title; or
   (3) by a regulation authorized by and lawfully adopted under a statute.
   "Offense" is defined in AS 11.81.900(b)(33) as: conduct for which a sentence of imprisonment or fine is authorized; an offense is either a crime or a violation.

sistence defense as we define it in this opinion.

## DISCUSSION

In 1978 the legislature substantially amended several fish and game statutes to reflect a policy favorable to subsistence hunting. The substantive changes were prefaced by the following statement of intent:

> The legislature finds that there is a need to develop a statewide policy on the utilization, development and conservation of fish and game resources, and to recognize that those resources are not inexhaustible and that preferences must be established among beneficial users of the resources. The legislature further determines that it is in the public interest to clearly establish subsistence use as a priority use of Alaska's fish and game resources and to recognize the needs, customs and traditions of Alaskan residents. The legislature further finds that beneficial use of those resources by all state residents should be carefully monitored and regulated, with as much input as possible from the affected users, so that the viability of fish and game resources is not threatened and so that resources are conserved in a manner consistent with the sustained-yield principle.

§ 1, Ch. 151, SLA 1978 (1978 Temporary and Special Acts and Resolutions).

Prior to the 1978 amendments, AS 16.05.-255 did not mention subsistence, but provided in part:

> *Regulations of the Board of Game.* (a) The Board of Game may make regulations it considers advisable in accordance with the Administrative Procedure Act (AS 44.62) for
>
> . . . .
>
> (2) establishment of open and closed seasons and areas for the taking of game;

(3) establishment of the means and methods employed in the pursuit, capture and transport of game;

(4) setting quotas and bag limits on the taking of game. . . .

The statute was amended in 1978 by adding a new subsection:

> (b) The Board of Game shall adopt regulations in accordance with the Administrative Procedure Act (AS 44.62) permitting the taking of game for subsistence uses unless the board determines, in accordance with the Administrative Procedure Act, that adoption of the regulations will jeopardize or interfere with the maintenance of game resources on a sustained-yield basis. Whenever it is necessary to restrict the taking of game to assure the maintenance of game resources on a sustained-yield basis, or to assure the continuation of subsistence uses of such resources, subsistence use shall be the priority use. If further restriction is necessary, the board shall establish restrictions and limitations on and priorities for these consumptive uses on the basis of the following criteria:
>
> (1) customary and direct dependence upon the resource as the mainstay of one's livelihood;
>
> (2) local residency; and
>
> (3) availability of alternative resources.[4]

On May 14, 1983, when the deer season in Game Unit 8 was completely closed, Eluska was found in possession of a freshly killed doe. He was prosecuted pursuant to 5 AAC 81.320(6) and 5 AAC 81.140(a). Eluska argued and the trial court found that application of 5 AAC 81.320(6) to Eluska would be inconsistent with the requirements of AS 16.05.255(b) because the regulations governing hunting in Game Unit 8 made no specific provision for subsistence use. Eluska argued that nothing short of regulations which expressly distinguish be-

---

4. The legislature also established a section on subsistence hunting and fishing within the Department of Fish and Game, and provided a procedure for creating "subsistence hunting areas," where subsistence is the only use. *See* AS 16.05.090(c) (creating a subsistence section within the Department of Fish and Game); AS 16.05.094 (defining the duties of the subsistence section); AS 16.05.257 (providing for the creation of "subsistence hunting areas"); AS 16.05.-940(23) (defining "subsistence uses").

tween subsistence and sport hunting will satisfy section (b) of AS 16.05.255. On appeal, the state argues that the regulation need not expressly provide for subsistence uses and that the regulation in this case makes adequate provision for subsistence hunters. The clear language of the statute, the state continues, provides that the Board shall adopt regulations "permitting" the taking of game for subsistence uses, not that it must adopt special "subsistence regulations." Thus, where a hunting season can accommodate hunting opportunities for all user groups without infringing upon the continuation of subsistence uses, that season is consistent with the state's subsistence law and need not be specially designated as a "subsistence" season. It was incumbent upon Eluska, the state concludes, to show that a six-month season and a seven-deer limit was insufficient to meet "subsistence uses" before he could prevail on his motion to dismiss.[5] Since there is nothing in the record indicating that there were insufficient deer in Game Unit 8 to meet all needs, including both sport hunting and subsistence uses, the state contends it was unnecessary for the Board to adopt any specific subsistence regulations, and therefore the trial court erred in finding that prosecution of Eluska under 5 AAC 81.320(6) and 5 AAC 81.140(a) was inconsistent with the enabling statute.

We believe that the parties' reliance on AS 44.62.030 obscures rather than illuminates the present controversy. The regulations in question are similar to regulations which were passed before the enactment of AS 16.05.255(b) and were apparently enacted under the authority granted in AS 16.-05.255(a). They are clearly not inconsistent with the first subsection of the statute. Given the substantial burden that a party challenging an administrative regulation on inconsistency grounds must sustain, we are satisfied that Eluska has not proved that 5 AAC 81.320(6) and 5 AAC 81.140(a) are on their face necessarily inconsistent with the statutory requirements of subsection (a), since, as the state points out, it is at least conceivable that sufficient deer existed on Kodiak Island to meet all subsistence needs despite the bag limits, seasons and other restrictions set by the regulations. *But cf. Madison v. Alaska Department of Fish and Game,* 696 P.2d 168, 172 n. 9, (Alaska 1985) (holding Board of Fisheries regulations defining subsistence fisheries inconsistent with AS 16.05.940(22), (23), and 16.-05.251(b), which define "subsistence fishing" and "subsistence uses," and require the Board to adopt regulations permitting subsistence fishing).

This conclusion does not resolve the case, however, because we agree with the trial court that a proper resolution of this case requires consideration of AS 16.05.255(b) as well as AS 16.05.255(a). We must determine what the 1978 legislative enactment required the Board to do and then determine whether the Board properly carried out the legislative mandate. Finally, if the Board has not followed the legislative directive, we must determine what effect its failure would have on Eluska's prosecution. Having considered the record and the parties' arguments, we conclude that by enacting subsection (b) of AS 16.05.255, the legislature required the Board of Game to

---

5. The state finds support for its position in a series of attorney general opinions and in the legislative history of the Alaska National Interest Lands Conservation Act (ANILCA) P.L. 96–487, 94 Stat. 2371 (1980), particularly in section 804 (codified at 16 U.S.C. § 3114 (1982) ). The state points out that the federal statute was intentionally patterned after Alaska's subsistence law and provides virtually identical language to that found at AS 16.05.255(b). H.R. Rep. No. 96–97, Part 2, 96th Cong., 1st Sess. 191 (1980). The legislative history of section 804 specifies that:

If a particular fish or wildlife population in a particular area is sufficient to sustain harvest by all persons engaged in subsistence and other uses, restrictions on taking for nonsubsistence uses are not required by this section. *Id.* at 193. *But see Madison v. Alaska Department of Fish and Game,* 696 P.2d 168, 176 n. 13 (Alaska 1985) (rejecting an interpretation of the terms "customary and traditional" derived from ANILCA).

adopt specific regulations "permitting"[6] the taking of game for subsistence uses. No such regulations were adopted governing Game Unit 8. Consequently, we are required to recognize a "subsistence" defense to prosecutions under regulations adopted in accordance with AS 16.05.255(a) in order to carry out the legislative intent.

## I. Legislative Mandate

We believe the Board's duty to publish regulations pursuant to AS 16.05.255(b) to have been mandatory. *See Sisters of Providence in Washington, Inc. v. Department of Health and Social Services*, 648 P.2d 970, 977–78 (Alaska 1982); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408 (Alaska 1973); *United States Smelting, Refining and Mining Company v. Local Boundary Commission*, 489 P.2d 140 (Alaska 1971). Our conclusion that the legislature intended a mandatory responsibility is based on two factors. First, the legislature uses the word "shall" which is mandatory language. *See* 1A C. Sands, *Sutherland Statutory Construction* § 25.04 (4th ed. 1972); 2A C. Sands, *Sutherland Statutory Construction* § 57.03 (4th ed. 1973). Second, the language of the statute, construed in light of its legislative history, demonstrates a legislative intention to have the Board of Game pass meaningful subsistence regulations. While the statute does not specifically state whether the regulations must be separate and clearly distinguishable from the regulations adopted pursuant to AS 16.05.255(a), it does require that provision for subsistence hunting must be made somewhere in the regulations.[7]

When Chapter 151, SLA 1978 was being considered in the legislature, the Special

---

**6.** The state's suggestion that the regulations "permitted" subsistence hunting to the extent that they did not prohibit it outright exhibits a misunderstanding of the statute. As the supreme court pointed out in *Madison*, 696 P.2d at 173–174 (in discussing the two-tier regulation established in the statute), the Board may not restrict subsistence hunting at all in an area in which sport or commercial hunting is permitted. Even if sport and commercial hunting are totally prohibited at all times in an area, the Board is still prohibited from restricting subsistence hunting unless the Board specifically finds that unrestricted subsistence hunting would interfere with sustained yield. *Id.* In the absence of evidence that all other hunting was prohibited in an area and that in addition subsistence hunting was restricted solely for sustained-yield purposes, any attempt to punish a subsistence use as a violation of a hunting regulation is suspect.

In reaching these conclusions we stress that we do not decide nor do we read *Madison* as deciding bright line rules for differentiating between subsistence uses, sport uses, and commercial uses. In fact the supreme court pointed out that a commercial fisherman might well be a subsistence user when he fishes for personal consumption. By the same token many men and women who think of themselves as sport hunters may well find that their taking satisfies the statutory definition of a "subsistence use." AS 16.05.940(23). It may be that most "sport hunting" qualifies as "subsistence hunting." We express no opinion on this question. It was precisely because the legislature believed that the rights of the various groups could only be determined through an understanding of the history of hunting in Alaska that the Board was given the power to interpret the statute and to promulgate regulations establishing a reasoned basis for distinguishing subsistence uses from sport uses and commercial uses. The Board's default in meeting this obligation leaves us with the problem faced today.

Finally, we do not read the supreme court's discussion of the legislative history regarding the use of the term "customary and traditional" as constituting an implicit finding that the statute is somehow void as a discrimination against outsiders and newcomers. *See Madison*, 696 P.2d at 175–176. We assume that the Board will be able to adopt regulations adequately answering the questions left open by this case and *Madison* without violating state and federal equal protection guarantees. *See Zobel v. Williams*, 457 U.S. 55, 60–61, 102 S.Ct. 2309, 2312–13, 72 L.Ed.2d 672, 677–78 (1982) (when a state distributes benefits unequally between past residents and newcomers the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment); *cf.* Alaska Constitution art. VIII (establishing limitations on state regulation of hunting and fishing).

**7.** *Cf. Madison*, 696 P.2d at 171, 174 (state may no longer allocate for subsistence uses at its discretion pursuant to AS 16.05.251(a), nor may state permit sport or commercial hunting in any area where subsistence hunting is restricted; even in those areas where sport and commercial hunting are totally prohibited, subsistence hunting may not be restricted unless the Board finds that limitation on subsistence hunting is necessary for sustained-yield purposes).

Committee on Subsistence issued a letter of intent which provided in part:

> This bill is intended to provide a coordinated plan for clarifying what subsistence use of fish and game is and for documenting subsistence uses so that they can be integrated into fish and game management planning. This bill also provides a legislative framework for the State's policy of recognizing subsistence as the priority use of fish and game.
>
> . . . .
>
> *Sections six and seven:* These two sections, [AS 16.05.251(b) and .255(b) ] which are virtually identical for the Boards of Fisheries and the Board of Game, are intended to statutorily set out the priority given to subsistence use of fish and game resources. While there are presently regulations for subsistence fishing, there is no mechanism for the promulgation of subsistence hunting regulations except with the creation of subsistence hunting areas pursuant to AS 16.05.257. Section seven would allow for these regulations so that subsistence hunting could be distinguished by separate regulations from sports hunting. Further, these sections set forth a priority of users if restrictions are needed because of the unavailability of resources. The priority list is an attempt to insure that those with the most dependence upon the fish and game resources are the last to be restricted.
>
> If there is a need to restrict the taking of fish or game in order to avoid damaging the fish stocks or game populations, or in order to assure that subsistence users may continue to take fish or game, it is the intent of the Committee that sports or commercial use be restricted before subsistence use. If these restrictions are inadequate, restriction of subsistence use as well is authorized based upon the dependence on the resource, the local residence of the subsistence users, and the availability of alternate resources. It is the intent of the Committee that decisions and determinations by the Board of Fisheries and the Board of Game will be subject to complete public

scrutiny and that reasons will be given for any action or any failure to act.

Letter of Intent, Special Committee on Subsistence, 2 House Journal 1154, 1155 (1978).

The Committee's letter is entitled to substantial weight in determining the legislative intent in enacting the statutes. *See Madison,* 696 P.2d at 174-175; 2A C. Sands, *Sutherland Statutory Construction* § 48.07 (4th ed. 1973). It indicates that the legislature intended the statute to change the existing system which did not provide a mechanism for establishing separate subsistence regulations.

## II. Board's Inaction

■ The Board of Game has not promulgated a specific regulation governing subsistence hunting in Game Unit 8, nor has it made specific provisions for a subsistence defense or exception to prosecutions under regulations adopted pursuant to AS 16.05.-255(a). The time that has elapsed from 1978 to the present has provided more than adequate opportunity for the Board to carry out its statutory responsibility. Consequently, we conclude that the Board has failed to carry out its responsibilities and, under the authority of *United States Smelting,* 489 P.2d at 141-42, dismissal of Eluska's prosecution might have been justified. We believe the supreme court's comments regarding the Local Boundary Commission in *United States Smelting* are particularly appropriate to this situation:

> In our view the Local Boundary Commission has had sufficient time to discover sensible principles pertaining to the changing of local boundaries. Permitting continued failure on the commission's part to promulgate standards for changing local boundary lines can no longer be justified by the need for further experience. Since under AS 44.19.-260(a) the legislature required the commission to develop standards in order to recommend boundary changes, and the commission had not developed standards prior to the Nome annexation proceedings, we hold that the commission lacked the power to recommend the Nome

boundary changes in question. To do otherwise would be to condone the commission's nonobservance of a valid legislative prerequisite to the exercise of the commission's discretion in matters of local boundary changes.

489 P.2d at 142 (footnotes omitted).

### III. "Subsistence" Defense

■ We decline to affirm the dismissal of the prosecution, however, because we believe the statute interpreted in light of its legislative history suggests an alternate remedy which adequately balances the rights of Eluska and those similarly situated to engage in subsistence hunting and the state's legitimate interest in protecting the fish and game resources of the state. In the absence of specific regulations governing subsistence hunting applicable to Game Unit 8, we hold that Eluska was entitled to rely on a "subsistence" defense to prosecution under regulations implementing AS 16.05.255(a). We are guided in this decision by our supreme court's decision in *Frank v. State*, 604 P.2d 1068 (Alaska 1979). Frank was convicted for illegally taking and transporting a moose. He defended on the ground that the moose was necessary for a funeral potlatch which was an expression of religious belief and that prosecution operated to abridge his freedom of religion. The supreme court agreed and ordered dismissal of the complaint. Having found that the use of moosemeat in funeral potlatches was a necessary requirement of Frank's religious beliefs and having concluded that the state failed to prove a countervailing public policy, the court adopted the exemption in question. While Eluska's rights are based on a statutory protection of subsistence

hunting, rather than a constitutional protection of religious freedom, we believe the same approach is in order.

■ In the absence of appropriate regulations,[8] we believe that the best way to accommodate Eluska's statutory right to subsistence hunting and the state's right to reasonably protect the state's game resources is to judicially recognize a defense for subsistence hunting. We therefore hold that when the trial court concludes, as a matter of law, that hunting occurs in an area in which the state has not adopted regulations pursuant to AS 16.05.255(b) providing for subsistence uses and recognizing the subsistence priority, conduct which would otherwise be a violation of a regulation adopted pursuant to AS 16.05.-255(a) restricting hunting is justified as a "subsistence use" if the person whose conduct is alleged to have constituted hunting in violation of the regulation believed he or she was taking the game for subsistence uses (*see* AS 16.05.940(23)) and was not aware of and did not consciously disregard a substantial and unjustifiable risk that his or her taking was not a subsistence use of the game taken. (See AS 11.81.900(a)(3) defining the mental state "recklessly.") We use the term "defense" as it is defined in the revised criminal code, AS 11.81.-900(b)(15):

"defense", other than an affirmative defense, means that

(A) some evidence must be admitted which places in issue the defense; and

(B) the state then has the burden of disproving the existence of the defense beyond a reasonable doubt.

■ In order to permit a pretrial dismissal of charges where appropriate[9] and

---

**8.** The defense recognized in this opinion exists only to the extent that the state has not adopted detailed regulations providing for subsistence hunting within an area. Such regulations when and if adopted would have the additional effect of guarding against abuses and would aid in record keeping to determine the true impact of subsistence hunting upon game management. *See Frank v. State*, 604 P.2d 1068, 1075 (Alaska 1979). Where the state has adopted valid regulations recognizing the subsistence priority they

would be controlling and the defense recognized here would no longer apply. Whether given regulations are valid is of course a question of administrative law for the court not a question of adjudicative fact for the jury. *Cf. Madison*, 696 P.2d at 173; *Kelly v. Zamarello*, 486 P.2d 906, 917 (Alaska 1971).

**9.** We recognize that a statute which defines an offense in terms which require reasonable men and women to guess at its meaning is constitutionally invalid. *State v. Rice*, 626 P.2d 104,

avoid delay in presenting such a defense, we will require a party intending to rely upon a subsistence defense to make a preliminary showing a reasonable time before trial. In a pretrial order the court may establish procedures, including time limits, for raising the defense. Failure to give notice of the defense before trial or in the manner prescribed in the pretrial order may, unless excused for good cause, result in the forfeiture of the defense. *See* Alaska R.Crim.P. 12(b)(3), 12(e), and 16(f)(3). *See also Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

A defendant desiring a pretrial dismissal of the prosecution may make a preliminary showing which should consist of some evidence, which may be in affidavit form, that he believed in good faith that, under all of the circumstances which he understood to exist, his hunting constituted a subsistence use of the animal or animals taken.[10]

The statute only requires the state to provide for subsistence hunting. If the state has enacted regulations making adequate provision for subsistence hunting

109–10 (Alaska 1981). A statute which clearly defines an offense may nevertheless be constitutionally infirm, if exceptions or defenses are recognized but their scope is unclear. A potential subsistence user must be able to determine before he or she hunts whether the hunt will comply with the law before he or she can be subjected to criminal prosecution for his or her hunting. Uncertainty regarding a person's rights may discourage him or her from subsistence hunting thus indirectly accomplishing a result which the legislation sought to prevent. We address the problem of "fair notice" in three ways. (1) We depart from ordinary practice and permit a defendant to obtain a pretrial judgment of acquittal in an appropriate case. While summary judgments are recognized in the civil rules we have never recognized such a procedure before in criminal cases. Nevertheless, we believe it appropriate in this type of case to insure that subsistence hunters are not put to the cost and uncertainty of a jury trial in those cases in which the state will clearly be unable to disprove the subsistence defense. The pretrial judgment of acquittal will thus serve the screening function served by a grand jury proceeding or preliminary hearing in felony cases. (2) We establish a *mens rea* of recklessness to insure that only those who recklessly hunt in bad faith will be subject to prosecution. (3) Finally, we define the exception as a defense rather than an affirmative defense to insure that the state must prove guilt beyond reasonable doubt by convincing a jury that the hunting in question was not a subsistence use. We stress that our recognition of the defense is required by the state's failure to comply with the statutes by adopting appropriate regulations. Should the state remedy this deficiency then the defense would no longer be applicable.

We have considered making the defense one for the court by analogy to entrapment. *See Yates v. State,* 681 P.2d 1362, 1363–64 (Alaska App.1984). Since the purpose of the defense is to substitute for regulations which would give guidance to those to be affected, a strong argument can be made for judicial decisions on a case-by-case basis that would have precedential

value. *See Yates* at 1364, *citing People v. Moran,* 463 P.2d 763, 769 (Cal.1970) (Traynor, C.J., dissenting). Nevertheless, we are satisfied that juries are in a particularly appropriate position to evaluate the subsistence defense. We have also considered and rejected making "subsistence use" an affirmative defense. AS 11.81.900(b)(1). We are satisfied that an affirmative defense would inappropriately distribute the burden of proof in light of the Board's failure to enact regulations giving appropriate guidance as it was required to do by AS 16.05.255(b).

**10.** Subsistence use is defined in AS 16.05.-940(23) as follows:

"subsistence uses" means the customary and traditional uses in Alaska of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation, for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife resources taken for personal or family consumption, and for the customary trade, barter or sharing for personal or family consumption; for the purposes of this paragraph, "family" means all persons related by blood, marriage, or adoption, and any person living within the household on a permanent basis.

"Customary" and "traditional" are not further defined in the statute and therefore must be given their common meanings. AS 01.10.040. "Customary" means according to custom, the usual way of doing something. *See* Oxford American Dictionary 156 (1980). "Traditional" means according to tradition, a custom handed down from generation to generation especially without writing, a long established custom or method of procedure. *Id.* at 728. *But see Madison,* 696 P.2d at 175: "customary and traditional" should be defined in accordance with legislative history. The words "customary and traditional" serve as a guideline to recognize historical subsistence use by individuals, both native and non-native Alaskans. In addition, subsistence use is not strictly limited to rural communities.

then the defense we have recognized would not exist. Consequently, if the defendant has made his preliminary showing, then the state should be given an opportunity to establish, if possible, either that the regulations which defendant allegedly violated did not in fact "restrict" the taking of game, AS 16.05.255(b), because, *e.g.*, it was a regulation of time, place and manner that did not significantly impact or impair subsistence use or, alternatively, that any restriction on subsistence use recognized subsistence priority and was intended to protect sustained yield. We interpret the term "restriction" to mean any significant impairment of subsistence uses. AS 16.05.-255(b).

■ If, after hearing the evidence, the court is satisfied that a reasonable jury could not find guilt beyond reasonable doubt, *i.e.*, there must be a reasonable doubt where the defendant's taking constituted a subsistence use, the prosecution should be dismissed. If reasonable men and women could differ, the defense should be submitted to the trier of fact with appropriate instructions setting out the statutory definition of subsistence use,[11] the requisite *mens rea*,[12] and the appropriate burden of proof. AS 11.81.900(b)(15)(B).[13]

Since the issues presented by the defense of subsistence involve mixed questions of fact and law which have not been addressed by the trial court, it is necessary for us to remand this case for further proceedings.

This case is REMANDED to the superior court for trial of Eluska's subsistence defense.[14]

11. *See* note 10 *supra.*

12. "Reckless." *See* note 9 *supra.*

13. *See* note 9 *supra.*

14. The opinion in this case was undergoing final editing at the time the supreme court issued its decision in *Madison*. The draft has been adapted to reflect our understanding of *Madison*. We recognize that future litigation will serve to clarify and refine both this decision and *Madison*.