STATE of Alaska, Appellant,

v.

Jay HEBERT, Daniel L. Smith, John W. Ivanoff, Timothy Neal Biggar, Robert Woiderski, Brian Osentoski, Stephen R. Heffernan, and Ronald J. Tweto, Appellees.

Jay HEBERT, et al., Cross–Appellants,

v.

STATE of Alaska, Cross–Appellee.

No. S–3357.

Supreme Court of Alaska.

Dec. 7, 1990.

Larri Irene Spengler, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellant and cross-appellee State.

Brad J. Brinkman, Batchelor, Murphy & Brinkman, Juneau, for appellees and cross-appellants Hebert, et al.

Donald C. Mitchell, Anchorage, for amici curiae Kokechik and Qaluyaat Fishermen's Associations.

## OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

Petitioners are eight herring sac roe fishermen who were charged with violating 5 AAC 27.987 by fishing in the Norton Sound district after having fished in another area.[1] That regulation established two "superexclusive" use fisheries in the central Bering Sea, Cape Romanzof and Norton Sound.[2] The regulation prohibits fishermen who operate in one of the superexclusive fisheries from participating in any other herring sac roe fishery. The converse is also true: fishermen who operate outside a superexclusive fishery may not operate within one.

Petitioners raised two defenses. First, they argued that the board did not have the authority to enact the superexclusive use regulation. Second, they contended that the regulation was unconstitutional under various clauses of the federal and state constitutions. Specifically, petitioners claimed violation of the following federal constitutional provisions: privileges and immunities, article IV, section 2; commerce, article I, section 8; and equal protection, 14th Amendment. With respect to the state constitution, petitioners contended that the regulation violated the equal rights clause, article I, section 1; the common use clause, article VIII, section 3; the prohibition against exclusive fishing rights, article VIII, section 15; and the equal application clause, article VIII, section 17.

Petitioner Hebert was charged with violation of the regulation and brought a motion to dismiss challenging the board's authority to enact it. Magistrate Gater granted the motion, and the state appealed. The court of appeals reversed, recognizing the board's authority to enact the regula-

---

1. 5 AAC 27.987 provides:

    SUPEREXCLUSIVE USE AREAS. (a) The Cape Romanzof and Norton Sound Districts are superexclusive use areas.

    (b) A person who participates in the commercial taking of herring as a CFEC permit holder in a superexclusive use area at any time from February 1 through June 30 may not participate or have participated in the commercial taking of herring, either as a CFEC permit holder or a crew member aboard a vessel used to take herring, in another superexclusive or non-exclusive use area at any time from February 1 through June 30 of that same year.

    (c) A person who participates in the commercial taking of herring as a crew member aboard a vessel that is used to take herring in a superexclusive use area at any time from February 1 through June 30 may not participate or have participated in the commercial taking of herring as a CFEC permit holder in another superexclusive or non-exclusive use area at any time from February 1 through June 30 of that year.

    (d) A vessel used in the taking of herring in a superexclusive use area at any time from February 1 through June 30 may not be used or have been used in the taking of herring in another superexclusive or non-exclusive use area at any time from February 1 through June 30 of that year.

2. The contested regulation created two such fisheries. Two other superexclusive use herring sac roe fisheries subsequently were created on the western coast. 5 AAC 27.899.

tion in *State v. Hebert,* 743 P.2d 392 (Alaska App.1987) (*Hebert I*).

Thereafter, Hebert and the seven other petitioners, who were also charged with violating the regulation, brought their constitutional challenge. Magistrate Gater granted the motions, holding that the regulation violated the equal rights provision of article I, and sections 3 and 15 of article VIII of the Alaska Constitution, and the immunities and commerce clauses of the United States Constitution. The state again appealed. In a memorandum opinion, the court of appeals denied all the federal constitutional challenges and the state equal rights challenge. It certified the article VIII challenges to this court. *State v. Hebert,* Mem. Op. & J. No. 1790 (Alaska App., April 19, 1989) (*Hebert II*).[3]

Following *Hebert II,* the petitioners filed a petition for hearing in this court, requesting that we adjudicate all the above issues. We accepted certification and granted the petition for hearing.

■■■ For the reasons given by the court of appeals in both of its opinions, we affirm the decision of the court of appeals with respect to the board's authority to promulgate superexclusive use regulations, and the federal constitutional issues and the state equal rights issue. With respect to the constitutional issues, we have two additional observations.

First, following the second opinion of the court of appeals, we decided *State v. Enserch Alaska Constr. Inc.,* 787 P.2d 624 (Alaska 1989). There we struck down on state equal rights grounds a statute which provided a public works hiring preference to residents of economically distressed zones. We quoted *Lynden Transport, Inc. v. State,* 532 P.2d 700, 710 (Alaska 1975): "[D]iscrimination between residents and nonresidents based solely on the object of assisting the one class over the other economically cannot be upheld under ... the ... equal protection clause[.]" *Id.* at 634.

We concluded: "[T]he disparate treatment of unemployed workers in one region in order to confer an economic benefit on similarly situated workers in another region is not a legitimate legislative goal." *Id.* (footnote omitted).

In the present case, one of the state's goals is, as it was in *Enserch,* to alleviate local economic distress. However, the critical difference between this case and *Enserch* is that in this case there is no discrimination between residents and nonresidents. Superexclusive use has the same effect on local fishermen who wish to fish outside one of the superexclusive use districts as it does on outsiders with a similar desire. The case of appellee Ronald Tweto illustrates this. Mr. Tweto, who resides at Shaktoolik on Norton Sound, is charged with fishing in the Norton Sound superexclusive use district after first fishing for herring at Togiak, several hundred miles to the south.

Similarly, nonresidents are free to choose to fish in a superexclusive use district. In the case of the Norton Sound district, statistics in the record indicate that slightly more than half of the fishermen participating in the herring fishery there do not reside in Norton Sound communities.

Second, the only question that we have concerning the court of appeals' analysis is whether the discrimination it perceived, "based on scale of operation," *Hebert II* at 8, is sufficient to trigger any sort of constitutional analysis. Large or expensive boats are not precluded from participating in superexclusive use districts. As noted above, statistics concerning the Norton Sound district indicate that a majority of the fishing effort there is still conducted by fishermen who reside elsewhere. Further, gear size limitations are a traditional tool of fisheries management in Alaska.[4] As to the complaint that the new use districts are too small for effective participation by large operators, we note that "time and

---

**3.** Because this decision is not published, we set it forth in the Appendix.

**4.** E.g., 5 AAC 06.341(a) ("No [Bristol Bay Commercial Salmon Fishing] vessel may be more than 32 feet in overall length."); 5 AAC 06.331 (restricting length of Bristol Bay drift gillnets to 150 fathoms and set gillnets to 50 fathoms); 5 AAC 24.332 (restricting length of purse seines in Prince William Sound).

area restrictions," like gear size limitations, are among the "time-honored brakes" imposed on fishermen to "achieve optimum escapement." *Glenovich v. Noerenberg*, 346 F.Supp. 1286, 1288 (D.Alaska 1972), *aff'd* 409 U.S. 1070, 93 S.Ct. 687, 34 L.Ed.2d 660.[5] We have not been presented with an argument which persuades us that such limitations may be at risk under either the federal or the Alaska constitution. Our constitution states that only "persons," not nets or boats, are "entitled to equal rights." *See* article I, section 1; *see also Ketchikan Gateway Borough v. Breed*, 639 P.2d 995 (Alaska 1981) (two-dollar flat fee for use of seaplane docking float held not violative of equal protection clause even though light aircraft on wheels could land without fee at airport); *Glenovich*, 346 F.Supp. at 1291 (statute forbidding use of power drum retrieval system on purse-seining salmon fishing vessels upheld).

■ We turn to the article VIII challenges as certified by the court of appeals. Section 3 of article VIII provides:

Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use.

Section 15 of article VIII provides:

No exclusive right or special privilege of fishery shall be created or authorized in the natural waters of the State. This section does not restrict the power of the State to limit entry into any fishery for purposes of resource conservation, to prevent economic distress among fishermen and those dependent upon them for a livelihood and to promote the efficient development of aquaculture in the State.

Section 17 of article VIII provides:

Laws and regulations governing the use or disposal of natural resources shall apply equally to all persons similarly situated with reference to the subject matter and purpose to be served by the law or regulation.

Another relevant provision of article VIII is section 4, which provides:

Fish, forest, wildlife, grasslands, and all other replenishable resources belonging to the state shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses.

As the court of appeals noted, the regulation at issue reflects in part an allocation decision, dividing the herring resource between competing subgroups of commercial fishermen. We stated in *McDowell v. State*, 785 P.2d 1 (Alaska 1989) that such decisions are both necessary and authorized under article VIII, section 4. *Id.* at 7–8. We also observed that the authority to make allocation decisions "does not imply a power to limit admission to a user group," as the latter power may conflict with the common use, no exclusive right of fisheries, and equal application clauses of section 3, 15 and 17.[6] *Id.* We stated with respect to the article VIII *clauses:* "Although the ramifications of these clauses are varied, they share at least one meaning: exclusive or special privileges to take fish and wildlife are prohibited." *Id.* at 6.

In our view the regulation does not violate any of the article VIII clauses. The regulation does not limit one's ability to fish in a superexclusive district except in the sense that one may not fish in more than one district in any one year. Regulations of this sort were common in Alaska prior to statehood. When the framers of our constitution met in 1956, exclusive registration was used throughout the commercial salmon fishery. Thus, for example, no fisherman could fish in the Bristol Bay registration area and in any other registration district, such as the Yukon area, in any one year. *E.g., Laws and Regulations for the Protection of the Commercial Fisheries of Alaska* 1959, U.S. Fish and Wildlife Service Regulatory Announcement 60 (issued March 1959). There is no suggestion

5. *See also Meier v. State*, 739 P.2d 172 (Alaska 1987) (affirming board's authority to promulgate 5 AAC 06.370(b) which required all Bristol Bay salmon fishermen to register to a district and imposed a 48–hour waiting period following a change in registration).

6. Except as expressly allowed under the second sentence of section 15. *See State v. Ostrosky*, 667 P.2d 1184, 1191 (Alaska 1983).

in the debates of the delegates to Alaska's Constitutional Convention that this regulatory device was meant to be prohibited by the article VIII equal access clauses. In view of the importance of the salmon fishing industry in Alaska, especially in the 1950's, it is not possible to conclude that the constitutional framers intended to prohibit this method of regulation.[7]

Further, we note that the regulation, if anything, furthers the interests underlying section 3's common use mandate. The board found that the number of fishermen probably would increase under the superexclusive use regulation, thus making it possible for more rather than fewer people to participate in commercial herring fishing.

For the above reasons, the decision of the court of appeals is AFFIRMED, and the decision of the magistrate is REVERSED.

APPENDIX

THE COURT OF APPEALS OF THE
STATE OF ALASKA

Court of Appeals Nos. A-2470, A-2480

MEMORANDUM OPINION AND
JUDGMENT *

Filed April 19, 1989

Before: BRYNER, Chief Judge,
COATS and SINGLETON, Judges.

SINGLETON, Judge.

This case concerns the constitutionality of 5 Alaska Administrative Code (AAC) 27.-987.[1] This part of the code provides that during any given fishing season, commercial fishers may fish for herring either in one of two superexclusive use areas, Cape Romanzof or Norton Sound, or they may fish in any or all of the other nonexclusive areas in the state. Fishers are thus precluded from fishing in both a superexclusive use area and in other areas during the same season. The circumstances surrounding Hebert's violation of this ordinance are set out in detail in *State v. Hebert*, 743 P.2d 392, 393-94 (Alaska App.1987). In that case, we rejected contentions that this ordinance was beyond the board of fisheries authority as set out in AS 16.05.251. *Id.* at 397.

At later dates, Daniel L. Smith, John W. Ivanoff, Timothy Neal Biggar, Roger Woiderski, Brian Osentoski, Stephen R. Heffernan, and Ronald J. Tweto were also charged with violating 5 AAC 27.987 for fishing in Norton Sound after having fished in a nonexclusive area. Each of these defendants, as well as Hebert, subsequently filed motions to dismiss. They alleged that 5 AAC 27.987 violated the fol-

7. With the advent of statehood and the transfer of authority to the state to regulate commercial fishing, the Board of Fish and Game continued to adopt regulations that continued the exclusive registration system. Following passage in 1973 of the Limited Entry Act, 79 SLA 1973, the statewide salmon fisheries were converted to a limited entry system which does not entail exclusive district registration. *See* AS 16.43. The Board of Fisheries continues to use exclusive registration to manage the harvest of shrimp and crab, 5 AAC 31.020 and 32.020(b), and, in Bristol Bay, uses a modified registration scheme to manage the salmon harvest. *See supra* note 2.

* Entered pursuant to Appellate Rule 214 and Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3).

1. 5 AAC 27.987 provides:
(a) The Cape Romanzof and Norton Sound Districts are superexclusive use areas.
(b) A person who participates in the commercial taking of herring as a CFEC permit holder in a superexclusive use area at any

time from February 1 through June 30 may not participate or have participated in the commercial taking of herring, either as a CFEC permit holder or a crew member aboard a vessel used to take herring, in another superexclusive or non-exclusive use area at any time from February through June 30 of the same year.
(c) A person who participates in the commercial taking of herring as a crew member aboard a vessel that is used to take herring in a superexclusive use area at any time from February 1 through June 30 may not participate or have participated in the commercial taking [of] herring as a CFEC permit holder in another superexclusive or non-exclusive use area at any time from February 1 through June 30 of that year.
(d) A vessel used in the taking of herring in a superexclusive use area at any time from February 1 through June 30 may not be used or have been used in the taking of herring in another superexclusive or non-exclusive use area at any time from February 1 through June 30 of that year.

lowing constitutional provisions: the state and federal equal protection guarantees, because of the regulation's discriminatory impact in favor of Alaska Natives, Alaska Const. art. I, § 1; U.S. Const. amend. XIV; the state equal protection guarantee, on its face, Alaska Const. art. I, § 1; the state common use mandate, Alaska Const. art. VIII, § 3; the state prohibition on the exclusive right of fishery, Alaska Const. art. VIII, § 15; the state uniform application provision, Alaska Const. art. VIII, § 17; the federal privileges and immunities clause, U.S. Const. art. IV, § 2; and the federal commerce clause, U.S. Const. art. I, § 8, cl. 3. Each of the defendants, with the exception of Hebert, also alleged that the Board of Fisheries had exceeded its authority when it promulgated the regulation. The district court consolidated all of the cases.

On March 14, 1988, Magistrate Bradley N. Gater granted the motion to dismiss and issued findings. Magistrate Gater concluded that 5 AAC 27.987 violates the common use mandate of the Alaska Constitution, the prohibition on the exclusive right of fishery of the Alaska Constitution, the privileges and immunities clause of the federal constitution, and the commerce clause of the federal constitution.

The state appeals the dismissal. Smith, Ivanoff, Biggar, Woiderski, Osentoski, Heffernan, Tweto, and Hebert cross-appeal the court's failure to include certain justifications for the dismissal. In their view, invalidation of 5 AAC 27.987 is also warranted because the provision goes beyond the scope of the authority of the Board of Fisheries and because it violates the equal protection clause of the state and federal constitutions in that it differentiates between fishers on the basis of race.

## ANALYSIS

We have concluded that the primary issues in this case involve challenges to the regulation based upon Alaska Constitution art. VIII. These challenges are matters of first impression in this jurisdiction and would more appropriately be addressed by the Alaska Supreme Court. We have therefore decided to certify these issues to the supreme court, pursuant to AS 22.05.-015(b) and Alaska Appellate Rule 408(b). The following reasons lead us to believe that the supreme court, rather than this court, should consider challenges under the Alaska Constitution Article VIII: (1) the impact of a decision goes beyond the criminal law and involves a vital part of our state's economy; (2) expertise in natural resources law rather than criminal law would seem to be required to adequately address the parties' arguments; and (3) the supreme court has recently decided a noncriminal law case which might be dispositive of the Article VIII challenges. *See Owsichek v. State*, 763 P.2d 488 (Alaska 1988).

In contrast, the parties raise other issues that are governed by established rules of law which this court may properly address at this time.

■ In their cross-appeal, Smith, Ivanoff, Biggar, Woiderski, Osentoski, Heffernan, and Tweto contend that the trial court should have determined that the Board of Fisheries lacked the authority to promulgate 5 AAC 27.987. In Hebert's case, the trial court in fact did make such a finding, and we reversed it on appeal. *See Hebert*, 743 P.2d at 397. The cross-appellants urge this court to reconsider that decision. We decline to do so. *Hebert* is therefore dispositive of this issue.

■ The state argues that a criminal defendant cannot challenge the constitutionality of the fishing regulation he or she is alleged to have violated as a defense to the charge. The state relies on *State v. Eluska*, 724 P.2d 514 (Alaska 1986). The state is in error. If the charging regulation is invalid, then the criminal complaint fails to state an offense and the defendant is entitled to a dismissal. *See* Alaska R.Crim.P. 12. In *Eluska*, the supreme court addressed a different problem. Essentially, this court had recognized a subsistence defense to a charge of a hunting violation. We had based our decision upon our common law power to develop the law. We did this in order to implement a statutory re-

quirement that subsistence rights be recognized. *See State v. Eluska,* 698 P.2d 174, 180 (Alaska App.1985). Alaska Statute 01.-10.010 provides:

> So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.

While the supreme court did not specifically address this statute, it is clear from a reading of its opinion that it found that the common law defense this court adopted conflicted with a state statute, AS 16.05.-920(a), and was thus an invalid exercise of the court's common law power. *See Eluska,* 724 P.2d at 515. In contrast, Hebert and the other fishermen in this case do not rely on a common law defense. Instead, they rely on a claimed conflict between the regulation in question and the constitutions of the United States and the State of Alaska. If the fishermen are correct, the regulation upon which their prosecution relies is invalid and the prosecution must be dismissed. We therefore reject the state's contention that *Eluska* immunizes the regulation from invalidation under the constitution.

■ The fishermen in this case make two equal protection arguments. The first, pursuant to Alaska Constitution article I, § 1, asserts that the regulation in question discriminates on the basis of race. Magistrate Gater rejected this claim and the fishermen have appealed. We will consider that contention in this opinion. The fishermen also argue that the regulation violates article VIII, section 17; this provision is also an equal protection clause, but it applies exclusively to laws and regulations governing the use or disposal of natural resources. The latter issue we certify to the Alaska Supreme Court.

In order to address the remaining equal protection challenge, it is necessary to identify the board's purpose or goal in enacting the regulation and then to evaluate the means chosen to accomplishing this purpose. *See Alaska Pacific Assur. Co. v. Brown,* 687 P.2d 264, 269–74 (Alaska 1984). In *Hebert,* we said: "The Board's undisputed purpose in promulgating the regulation was to allocate a percentage of the herring yield to local residents larger than they would otherwise receive in unregulated competition with fishermen from outside the district." 743 P.2d at 394. With this purpose in mind, we must next examine the mechanism whereby the fisheries board sought to achieve its goal.

It appears from a review of the board's findings that the mechanism used to effectuate its goal was to discriminate on the basis of a person's scale of operation. Essentially, the board found that those with greater financial resources could purchase more expensive boats and gear and were therefore capable of more efficient fishing. In this way, they obtained a greater percentage of the herring yield than those fishers who could only afford less expensive gear and boats. The board also found that, left alone, the less affluent fishers, utilizing available gear, could harvest the entire herring yield within the superexclusive districts. Finally, the board appears to have concluded that by establishing the superexclusive districts and permitting an individual fisher to fish either in a single superexclusive district or elsewhere, fishers who operated on a larger scale would be discouraged from fishing in the superexclusive districts because the yield they could expect from the superexclusive district would not justify their investment in gear and boats. In contrast, fishers operating under a smaller overhead and expecting a lower return could afford to fish exclusively in a single district. In other words, no one is precluded from fishing in a superexclusive district by virtue of his or her race or residence. We therefore find the regulation does not discriminate on its face on the basis of residence or race. We further find that racial or residential discrimination is not a necessary result of the enforcement of the regulation because, as the state points out, anyone willing and able to fish with less expensive gear who does not expect a substantial income, will be able to fish in the superexclusive districts.

In summary, the discrimination here is based on scale of operation; it is between those who have expensive equipment and those who have less expensive equipment. The discrimination is not on the basis of race or residence. The statute addresses a legitimate purpose: alleviating local poverty. The means chosen is legitimate. Local fishers are allowed reasonable access to available fish by mitigating the superior fishing ability possessed by those who can afford more expensive boats and more efficient fishing gear. That being the case, Magistrate Gater was correct in concluding that there is no racial discrimination in violation of article I, section 1, of the Alaska Constitution. However, we believe the question of whether the regulation's purpose and the means chosen to accomplish that purpose can withstand an equal protection challenge under the more specific standards in article VIII, section 17, of the Alaska Constitution, should be referred to the supreme court for consideration in connection with the challenges based on the other clauses of article VIII.

■ We next consider the claim that 5 AAC 27.987 violates the privileges and immunities clause of the United States Constitution. U.S. Const. art. IV, § 2. *See, e.g., Robison v. Francis*, 713 P.2d 259 (Alaska 1986). All successful challenges to statutes, ordinances, and regulations on the basis of this constitutional provision have involved clear-cut attempts to discriminate in favor of residents against nonresidents. Here, as we have seen, the discrimination is between the large scale and small scale operators, regardless of the fisher's residence or race. Citizens of states and communities beyond Bristol Bay who venture into Bristol Bay receive the same privileges and immunities which the citizens of Bristol Bay enjoy. In fact, the fishermens' primary complaint is that their lifestyle and standard of living is substantially greater than that of the residents of Bristol Bay and that therefore they cannot afford to fish on exactly the same terms that Bristol Bay residents enjoy. Therefore, the regulation does not violate the privileges and immunities clause of the United States Constitution. *See, e.g., Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (discussing the privileges and immunities clause in connection with the regulation of fishing).

■ We are also satisfied that 5 AAC 27.987 does not violate the commerce clause of the United States Constitution. U.S. Const. art. I, § 8, cl. 3. While we assume that the herring in question are in interstate commerce and therefore subject to congressional regulation, it is not contended that any congressional act directly conflicts with the regulation in question. In *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979), the Supreme Court set forth a three-prong test for determining whether a state statute which indirectly burdens interstate commerce is permissible in the absence of conflicting congressional action. The Court's inquiry concerns:

(1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce.

*Id.* at 336, 99 S.Ct. at 1736.

Here, there is no facial discrimination, nor do we believe there is any discrimination against interstate commerce, as such, in practical effect. As we have seen, the primary discrimination here is between those who can afford expensive and efficient gear and boats, and those who cannot. While it may be that fishers who come from out of state have greater investments in boats and gear than those from the surrounding area, the discrimination in this case can hardly be characterized as a burden on interstate commerce.

The judgment of the district court is AFFIRMED, in part, and REVERSED, in part. Those claims based upon Alaska Constitution, article VIII are certified to

the Alaska Supreme Court for further consideration.