**STATE of Alaska, Petitioner,**

v.

**David ELUSKA, Respondent.**

No. S–991.

Supreme Court of Alaska.

Aug. 29, 1986.

Sarah Elizabeth McCracken, Asst. Atty. Gen., Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for petitioner.

Michael J. Wall, Asst. Public Defender, Kodiak, and Dana Fabe, Public Defender, Anchorage, for respondent.

Robert T. Anderson, Lawrence A. Aschenbrenner, Anchorage, amicus curiae for Native American Rights Fund.

William E. Caldwell, Judith K. Bush, Andrew R. Harrington, Alaska Legal Services, Fairbanks, and Mark Regan, Alaska Legal Services, Barrow, amicus curiae for plaintiffs in Bobby v. Alaska, Case No. A84–544 CW (D.Alaska).

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

In *State v. Eluska,* 698 P.2d 174 (Alaska App.1985), the court of appeals affirmed the dismissal of charges against a Kodiak hunter, David Eluska. We granted the state's petition for hearing.

On May 14, 1983, when the deer season was closed, Eluska was found in possession of a freshly killed doe. Eluska was charged with possessing game taken in violation of the Board of Game's regulations.[1] In his defense, he claimed that the Board's regulations failed to differentiate between subsistence hunting and other hunting. *Id.* at 176–77. Both the trial court and the court of appeals agreed that AS 16.05.-255(b)[2] required separate subsistence regulations. *Id.* at 176, 178–80.

---

**1.** Eluska was prosecuted pursuant to former 5 AAC 81.320(6) and 5 AAC 81.140(a). 698 P.2d at 176. Former 5 AAC 81.140(a) provided:

No person may possess, transport, or place into the possession of another, any game or parts of game that the person has taken in violation of AS 16 or a regulation promulgated thereunder.

698 P.2d at 175 n. 2. In response to the court of appeals' decision the Board rescinded these reg-

ulations on July 5, 1985, and issued separate subsistence and general hunting regulations. *See* 5 AAC 83.030 (subsistence limit of five deer between August 1 and January 7); 5 AAC 83.130 (identical restrictions on general deer hunting). The new regulations are not before us in this appeal.

**2.** AS 16.05.255(b) states:

The Board of Game shall adopt regulations in accordance with the Administrative Proce-

To "remedy" the Board's failure to adopt such regulations, the court of appeals created a "subsistence" defense:

> [W]hen the trial court concludes, as a matter of law, that hunting occurs in an area in which the state has not adopted regulations pursuant to AS 16.05.255(b) providing for subsistence uses and recognizing the subsistence priority, conduct which would otherwise be a violation of a regulation adopted pursuant to AS 16.05.255(a) restricting hunting is justified as a "subsistence use" if the person whose conduct is alleged to have constituted hunting in violation of the regulation believed he or she was taking the game for subsistence uses (*see* AS 16.05.940(23)) and was not aware of and did not consciously disregard a substantial and unjustifiable risk that his or her taking was not a subsistence use of the game taken.[3]

*Id.* at 180. We reverse.

## THE "SUBSISTENCE" DEFENSE CONTRADICTS THE LEGISLATIVE MANDATE OF AS 16.05.920(a)

■ Since this case involves a question of statutory interpretation, we independently evaluate the lower court's interpretations of AS 16.05.255(b). *State, Commercial Fisheries Entry Commission v. Templeton*, 598 P.2d 77, 81 (Alaska 1979) (footnote omitted).

AS 16.05.920(a) states:

> dure Act (AS 44.62) permitting the taking of game for subsistence uses unless the board determines, in accordance with the Administrative Procedures Act, the adoption of the regulations will jeopardize or interfere with the maintenance of game resources on a sustained-yield basis. Whenever it is necessary to restrict the taking of game to assure the maintenance of game resources on a sustained-yield basis, or to assure the continuation of subsistence uses of such resources, subsistence use shall be the priority use. If further restriction is necessary, the board shall establish restrictions and limitations on and priorities for these consumptive uses on the basis of the following criteria:
> (1) customary and direct dependence upon the resource as the mainstay of one's livelihood;
> (2) local residency; and
> (3) availability of alternative resources.

Unless permitted by this chapter or by regulation adopted under this chapter, a person may not take, possess, transport, sell, offer to sell, purchase, or offer to purchase fish, game or marine aquatic plants, or any part of fish, game or aquatic plants, or a nest or egg of fish or game.

This section has been part of Alaska's fish and game code since the early days of statehood. Art. I, ch. 94, § 28, SLA 1959. It is phrased negatively: *"unless* permitted," no one has a right to take or possess Alaskan game. No regulation authorized David Eluska to take a deer in Kodiak in May, and his taking of the deer was, therefore, unlawful.

■ The court of appeals implicitly ruled that section 255(b) authorized Eluska's taking.[4] We disagree. Section 255(b)'s history does indicate the legislature's intent that there be separate regulations governing subsistence hunting. *See Eluska*, 698 P.2d at 179. We find no evidence, however, of an intent to grant any personal right to take or possess game in the absence of such regulations. Section 255(b) merely established the priority of subsistence uses *within* the regulatory scheme.[5] If the regulations adopted by the Board fail to establish the desired priority, it is difficult to believe that the legislature intended unregulated hunting to be the result.[6]

3. AS 16.05.255(a) details the Board of Game's regulatory powers.

4. The appellate court remanded to determine whether Eluska met its criteria for assertion of the defense. *Eluska*, 698 P.2d at 182.

5. Our dissenting colleagues state that "unregulated subsistence hunting is permissible under section 920(a) by virtue of the provisions in section 255(b)." Opinion at 10. In our view, this conclusion is flawed since 255(b) speaks exclusively of *regulated* subsistence hunting.

6. Such a conclusion would contradict the constitutional mandate that state resources be managed on a sustained yield basis. Article VIII, section 4 of the Alaska Constitution states:
> Fish, forests, wildlife, grasslands, and all other replenishable resources belonging to the State shall be utilized, developed, and main-

In permitting unregulated subsistence hunting, as a remedy for the board's failure to adopt subsistence regulations, the court of appeals relied upon *United States Smelting, Refining & Mining v. Local Boundary Commission*, 489 P.2d 140 (Alaska 1971). In that case we struck down a city boundary change made by the Local Boundary Commission because the Commission had not first complied with a legislative command to develop standards and procedures for changing boundary lines. We did not say that those regulated by the Commission, cities and boroughs, could change their own boundaries because of the Commission's failure to comply with the statute. *United States Smelting* stands only for the proposition that agency action taken without first complying with a statutory requirement may be invalid; it does not stand for the proposition that an agency's failure to act in accordance with a statutory requirement means that those who are regulated by the agency may act as though they were not regulated. *United States Smelting*, therefore, does not support the result reached by the court of appeals.

Thus, we decline to recognize a subsistence defense in this case. No statute or regulation authorized Eluska's hunt. His possession of game was therefore illegal under AS 16.05.920(a). The state could properly prosecute Eluska for violation of 5 AAC 81.140(a) (repealed 1985),[7] since he possessed game in violation of the fish and game code.[8]

We REVERSE and REMAND to the trial court for further proceedings consistent with this opinion.

---

tained on the sustained yield principle, subject to preferences among beneficial uses.

The court of appeals' construction of AS 16.05.-255(b) practically removes large portions of state resources from any management plan; it shifts decision-making from the state to individual hunters. We believe that the legislature did not intend such a constitutionally suspect elimination of management. *See also Madison v. State, Dep't of Fish & Game*, 696 P.2d 168, 176 (Alaska 1985) (preamble to subsistence law establishes intent that subsistence rights exist within sustained yield management plan).

COMPTON, Justice, with whom RABINOWITZ, Chief Justice, joins, dissenting.

I disagree with the opinion of the court because it ignores legislative intent and basic principles of statutory construction, condones inaction by the Board of Fish and Game and disregards notions of fairness.

My principal objection to the court's opinion is that it contains only a cursory treatment of the legislative history behind AS 16.05.255(b). In adopting the subsistence legislation, the legislature intended to "establish subsistence use as a priority use of Alaska's fish and game resources and to recognize the needs, customs and traditions of Alaskan residents." Ch. 151, § 1, SLA 1978; *see also* Letter of Intent, Special Committee on Subsistence, 2 House Journal 1154–55 (1978). The priority afforded subsistence uses operates as follows: If there is a need to restrict the taking of fish and game in order to maintain sustained-yield or assure the continuance of subsistence uses, then "it is the intent of the Committee that sports or commercial use be restricted *before* subsistence use." 2 House Journal at 1155 (emphasis added). "The priority list is an attempt to insure that those with the most dependence upon the fish and game resources are the last to be restricted." *Id.* At this point in the analysis, subsistence users can hunt all year around. If unrestricted subsistence hunting threatens sustained-yield, the Board can restrict subsistence uses. Before restricting subsistence uses, the Board must make a finding that 1) maintenance of sustained-yield or subsistence uses is jeopardized and 2) restrictions on commercial

---

Where possible, we prefer to avoid construing a statute as unconstitutional. *Hammond v. Hoffbeck*, 627 P.2d 1052, 1059 (Alaska 1981).

**7.** *See supra* note 1.

**8.** We note that AS 16.05.930(b) allows the taking of game out of season in case of "dire emergency." At the time this case arose, 5 AAC 81.900 (repealed 1985) authorized such takings. On remand, the trial court may be asked to determine whether Eluska's circumstances met the regulatory definition of "dire emergency."

and sport uses are inadequate to assure maintenance of game on a sustained-yield basis or continuation of subsistence uses.

The letter of intent further states that "there is no mechanism [under the current fish and game laws] for the promulgation of subsistence hunting regulations" except for the creation of subsistence hunting areas. *Id.* In reading the legislative history, it is clear that the legislature intended the statute to change the existing regulatory system which did not recognize the needs of subsistence users.

Therefore, it cannot be said that § 255(b) "merely established the priority of subsistence uses within the regulatory scheme." Section 255(b) explicitly permits subsistence hunting. It states that "[t]he Board of Game *shall* adopt regulations ... *permitting the taking of game for subsistence uses* unless the board determines ... that adoption of the regulations will jeopardize or interfere with the maintenance of game resources on a sustained-yield basis." (Emphasis added). Subsistence hunting is a legislatively-granted right, which is subject to regulation. Sport and commercial hunting, however, are only permitted by regulation. AS 16.05.920(a).

Moreover, the court ignores the basic rule of statutory construction that statutes *in pari materia* should be construed together. 2A C. Sands, Sutherland Statutory Construction § 51.01, at 449 (4th ed.1973) (hereinafter C. Sands). Statutes are deemed to be *in pari materia* when they relate to the same purpose or thing or have the same purpose or object. *See Morton v. Hammond,* 604 P.2d 1, 3 n. 5 (Alaska 1979). If statutes are *in pari materia* and one section covers the subject in general terms and the other covers a part of the same subject in more detail, then the two statutes should be harmonized if possible. *Id.* at 3. If there is any conflict between the statutes, the more specific controls over the general. 2A C. Sands, *supra,* § 51.05, at 499.

AS 16.05.255(b) and 920(a) are *in pari materia* since both statutes address the subject of taking game. Section 920(a) speaks of taking game generally while § 255(b) speaks specifically of taking game for subsistence uses. The statutes are easily harmonized. Originally enacted in 1959, § 920(a) provides a general prohibition against hunting unless otherwise permitted. Enacted subsequent to § 920(a), § 255(b) provides an exception to this general rule by stating that the Board shall adopt regulations permitting and granting priority to subsistence uses. Thus, unregulated subsistence hunting is permissible under § 920(a) by virtue of the provisions in § 255(b). The court's rigid reading of the language in § 920(a) ignores the legislative intent to permit and prioritize subsistence uses.

My second objection to the court's opinion is that it implicitly approves of the Board's failure to promulgate separate subsistence regulations. The opinion concedes that the Board must adopt separate regulations governing subsistence use; however, it puts no teeth into this requirement. The court of appeals' creation of the subsistence defense was remedial both because it assures subsistence users the priority granted in § 255(b) and because it gives the Board an incentive to quickly correct its failure to adopt regulations. *State v. Eluska,* 698 P.2d 174, 180 & nn. 8–9 (Alaska App.1985).

In condemning the Board's passivity, the court of appeals analogized and relied upon *United States Smelting, Refining and Mining Co. v. Local Boundary Commission,* 489 P.2d 140 (Alaska 1971). In *United States Smelting,* the local boundary commission failed to comply with a statutory mandate to promulgate standards for changing local boundary lines. In holding that the commission lacked the power to recommend a Nome boundary change without having first developed such standards, this court stated that "[t]o do otherwise would be to condone the commission's nonobservance of a valid legislative prerequisite to the exercise of the commission's discretion in matters of local boundary changes." 489 P.2d at 142 (footnote omitted). Here, the Board can prohibit and

regulate subsistence uses at certain times if it makes the requisite findings and specific regulations. Since the Board has not promulgated separate subsistence regulations or made specific findings, the state exceeds its power when it prosecutes subsistence users under general hunting regulations. The subsistence defense operates not only as a shield to the state's ultra vires act but also as a sword to continued Board inaction.

The court correctly states the proposition we apply from *United States Smelting.* The court's problem in fact is not, however, with our citation to this case, but rather with our initial premise which is that § 255(b) grants the right to subsistence hunt. *Subsistence hunting is permitted unless prohibited.* Under this premise, if the Board has not made specific findings or separate subsistence regulations, then subsistence hunters have the right to hunt. These hunters can hunt and "act as though they were not regulated", since they are not. Unlike subsistence hunters who have a statutory right to hunt, cities and boroughs, with few exceptions, do not have a statutory right to change their own boundaries. *See* Alaska Const. art. X, § 12; AS 29.68.010; 19 AAC 10.630–730.

We are not applying the principle from *United States Smelting* to justify subsistence hunters' actions but rather to invalidate the state's prosecution when the Board has failed to issue valid subsistence regulations. Absent subsistence regulations, the state has no authority to prosecute subsistence hunters. It is absurd to claim that subsistence hunters are regulated by general commercial and sport regulations which are clearly inapplicable. Under our premise, the principle from *United States Smelting* clearly applies. Of course, since the court's initial premise is that subsistence hunting, like sport and commercial hunting, is prohibited unless permitted, *United States Smelting* would not, as the court states, "Stand as authori-

ty for the action taken by the court of appeals" since there is no regulation permitting subsistence hunting. Unfortunately the court's initial premise is demonstrably wrong.

The court fears that a subsistence defense would result in "unregulated hunting." The court's decision does not resolve the problem of unregulated hunting since it condones the Board's failure to regulate. If the Board fulfilled its duty to enact separate regulations, then the problem of open season hunting disappears. The solution to this problem is obvious—the Board must make findings with respect to sustained yield and regulate accordingly.

Finally, the court's decision undermines basic principles of fairness. A general principle from constitutional and criminal law provides that a person cannot be penalized for violating a vague law. *See Dunn v. United States,* 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743, 754 (1979); *Smith v. Goguen,* 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605, 611–12 (1974). "The root of the vagueness doctrine is a rough idea of fairness." *Colton v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972).

As indicated, § 255(b) grants the right to subsistence hunt and requires the Board to adopt separate regulations. The general hunting regulations are vague when read in light of § 255(b) since they do not cover subsistence uses and there are no subsistence regulations.[1]

The doctrine of vagueness incorporates notions of fair notice and warning by requiring legislature to set reasonably clear guidelines for law enforcement officers, courts and the public. *Smith v. Goguen,* 415 U.S. at 572–73, 94 S.Ct. at 1246–47, 39 L.Ed.2d at 611–12; W. LaFave & A. Scott, *Criminal Law* § 11, at 87–88 (1972). The courts will not punish a defendant when the legislature has given inadequate warn-

---

1. The court presumes that, in the absence of subsistence regulations, general hunting regulations apply to all uses. This is wrong. The general regulations are then not only vague but also overbroad since they sweep into their ambit subsistence uses which are specifically required to be treated separately.

ing/notice of the prohibited conduct. *See generally Dunn*, 422 U.S. at 112, 99 S.Ct. at 2197, 60 L.Ed.2d at 754 (to ensure the legislature speaks with clarity when defining criminal conduct, courts must decline to impose punishment for acts not plainly proscribed). Here, the Board has not notified the public that sport and commercial regulations apply to subsistence uses. A subsistence user cannot tell when it is legal to take game for subsistence uses. Therefore, the court should not penalize subsistence users when the Board has not clearly prohibited subsistence hunting.

I conclude that since the Board has failed to adopt specific subsistence regulations, AS 16.05.255(b) permits "unregulated" subsistence hunting. By rejecting the subsistence use defense, the court deprives subsistence users of a means to vindicate their statutory right.