Aaron M. JONES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5100.

Court of Appeals of Alaska.

May 2, 1997.

Denton J. Pearson, Pearson & Hanson, Sitka, for Appellant.

John T. Baker and Robert C. Nauheim, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Aaron M. Jones appeals his conviction for taking a deer out of season, AS 16.05.920(a). Jones shot the deer on a five-acre parcel of land owned by his uncle, John Littlefield. This parcel lies a few miles north of Sitka. The United States government conveyed this parcel to Littlefield in 1970 under the Alaska Native Allotment Act, former 43 U.S.C. §§ 270–1 through 270–3 (repealed in 1971).

The basic question presented in this appeal is whether the State of Alaska has the authority to enforce its game laws on parcels of land conveyed to Natives under the Alaska Native Allotment Act. Jones asserts that such parcels are "Indian country" within the meaning of 18 U.S.C. § 1151, and therefore the State lacks authority to enforce its game laws on these parcels.

■ In general, "Indian country" comprises three types of land: (a) "all land within ... any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent [deed]"; (b) "all dependent Indian communities within the borders of the United States"; and (c) "all Indian allotments, the Indian titles to which have not been extinguished". 18 U.S.C. § 1151. *See State of Alaska ex rel. Yukon Flats School District v. Native Village of Venetie Tribal Government,* 101 F.3d 1286, 1291 (9th Cir.1996).

In the present appeal, Jones asserts that his uncle's parcel of land falls within the statute's third category: Jones claims that Littlefield's parcel is "Indian country" because it is an "Indian allotment". This claim is problematic because Littlefield did not receive title to the land under the General Allotment Act (also known as the Dawes Act), now codified in 25 U.S.C. § 331 et seq.. Rather, as noted above, Littlefield received title to the land under the Alaska Native Allotment Act, former 43 U.S.C. § 270–1 et seq..

White society developed a distinctive relationship with the indigenous peoples of Alaska, different from the whites' relationship with the indigenous peoples of the Lower 48. *See Metlakatla Indian Community v. Egan,* 369 U.S. 45, 50–51, 82 S.Ct. 552, 557, 7 L.Ed.2d 562, 567–68 (1962); *Atkinson v. Haldane,* 569 P.2d 151, 154 (Alaska 1977). Because of this distinctive relationship, various federal courts ruled that Alaska Natives were not "Indians" for purposes of Title 25 of the United States Code, thus creating doubts whether Alaska Natives were eligible for Indian allotments under the General Allotment Act. *See Pence v. Kleppe,* 529 F.2d 135, 140 (9th Cir.1976). In 1906, Congress acted to cure this problem. However, rather than amending Title 25 to clarify that Alaska Natives qualified as "Indians" for purposes of the General Allotment Act, Congress passed a separate act—the Alaska Native Allotment Act. *See* H.R. Report No. 3295, 59th Congress, 1st Session (1906).

This new legislation, codified in 43 U.S.C. §§ 270–1 through 270–3, authorized the Secretary of the Interior to allot parcels of land "not to exceed one hundred and sixty acres" as homesteads to adult Alaska Natives. In contrast to the Indian allotments created under the General Allotment Act (which remain the property of the United States until the expiration of a lengthy trust period), Alaska Native allotments immediately became the homestead of the allottee, although the Native Allotment Act imposed restrictions on the allottee's power to sell or transfer the land.[1]

The distinction between "Indian allotments" and "Native allotments" has been carried forward in the Code of Federal Regulations. The regulations governing Indian allotments are found in 43 C.F.R. §§ 2530–2533. These regulations expressly do not apply to Native allotments in Alaska. *See* 43 C.F.R. § 2530.0–7; *see also* 43 C.F.R. § 2430.5(f) ("Lands *outside of Alaska* may be classified as suitable for Indian allotment under part 2530 of this chapter[.]") (emphasis added). A different section of the federal regulations, 43 C.F.R. § 2561, governs Alaska Native allotments.

Because the definition of "Indian country" in 18 U.S.C. § 1151 specifically refers to Indian allotments but omits any mention of Alaska Native allotments, it is far from clear whether Congress meant for Alaska Native allotments to be considered "Indian country". However, we conclude that we do not have to decide this question. Assuming for purposes of argument that Native allotments should be considered equivalent to Indian allotments for purposes of 18 U.S.C. § 1151, and that Native allotments therefore qualify as "Indian country" under the statute, the State of Alaska still has the authority to enforce its fish and game laws on these parcels.

Thirty-five years ago, the United States Supreme Court upheld the State of Alaska's regulation of Native fishing rights. *Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962). In *Kake*, the newly-formed State of Alaska had enacted a law banning the use of fish traps. The villagers of Kake and Angoon, who had long operated fish traps, asserted that the State of Alaska had no authority to enforce this ban against them. The Supreme Court ruled that the state could enforce its law:

> [Our prior] decisions indicate that even on reservations state laws may be applied to Indians unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law. Congress has gone even further with respect to Alaska reservations, [*see*] 18 U.S.C. § 1162[and] 28 U.S.C. § 1360[.] State authority over Indians is yet more extensive over activities, such as [the operation of fish traps] in this case, not on any reservation.

*Kake v. Egan*, 369 U.S. at 75, 82 S.Ct. at 571, 7 L.Ed.2d at 583.

■ Jones's claim for exemption from Alaska's game laws rests solely on his assertions that hunting is a traditional Native practice, and that his hunting took place on a Native allotment. He does not assert that his uncle's parcel is a "reservation", nor does he assert that he or his uncle are the grantees of a federally conferred right to take game. Under the authority of *Kake v. Egan*, we conclude that even if Littlefield's parcel is "Indian country" under the allotment clause of 18 U.S.C. § 1151, the State still has the right to enforce its fish and game laws on that parcel.

■ This conclusion requires a supplementary explanation. As can be seen from the quoted passage from *Kake v. Egan*, the Supreme Court's decision relied in part on 18

---

1. The Act as originally passed in 1906 declared Native allotments to be "inalienable"; the land was to pass to the allottee's heirs "in perpetuity". In 1956, Congress deleted this provision and instead declared that the Native allottee could "convey by deed ... title to the land so allotted" as long as the Secretary of the Interior approved the sale. The 1956 amendment further provided that "such conveyance shall vest in the purchaser a complete title to the land", unless the Secretary determines that the purchaser is another Alaska Native who is "unable to manage the land without the protection of the United States"—in which case, the restriction on alienation would continue (that is, the new purchaser would have to obtain Interior Department approval if he or she ever wished to sell the land).

U.S.C. § 1162. Under 18 U.S.C. § 1162(a), "the criminal laws of [Alaska] have the same force and effect within ... Indian country as they have elsewhere within the State". Thus, Congress has granted the State of Alaska criminal jurisdiction over any and all Indian country within the state.

■ However, not every law that carries a criminal penalty is "criminal" for purposes of 18 U.S.C. § 1162(a). In *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Supreme Court ruled that a state's criminal jurisdiction over Indian country is limited to its "prohibitory" laws (those that forbid people from engaging in specified conduct); the state jurisdiction granted by 18 U.S.C. § 1162(a) does not include "regulatory" laws (those that regulate the time or manner in which people may engage in the conduct).

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within [18 U.S.C. § 1162(a)]'s grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory[,] and [18 U.S.C. § 1162(a)] does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Cabazon Band*, 480 U.S. at 209, 107 S.Ct. at 1088, 94 L.Ed.2d at 255.

In *Cabazon Band*, the Supreme Court employed this "prohibitory"—"regulatory" distinction to reach the conclusion that California could not enforce its gaming laws against a bingo parlor on an Indian reservation. "In light of the fact that California permits a substantial amount of gambling activity, including bingo, and actually promotes gambling through its state lottery, we must conclude that California regulates rather than prohibits gambling in general and bingo in particular." 480 U.S. at 211, 107 S.Ct. at 1089, 94 L.Ed.2d at 256 (footnote omitted). Having concluded that California's laws against unauthorized gambling were "regulatory" in purpose, the Court attached no importance to the fact that California had made it a misdemeanor offense to engage in gambling without a state permit: "[The fact] that

an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of [18 U.S.C. § 1162(a) ]." *Id.*

It might be argued that Alaska's laws governing the taking of deer are "regulatory" for purposes of defining the State's criminal jurisdiction under 18 U.S.C. § 1162(a), since the hunting of deer does not violate Alaska's public policy. However, the Supreme Court carefully noted in *Cabazon Band* that the analysis quoted above is "not a bright-line rule", 480 U.S. at 210, 107 S.Ct. at 1089, 94 L.Ed.2d at 255, and that "[t]he applicable state laws governing an activity must be examined in detail before [those laws] can be characterized as regulatory or prohibitory." n.10, 480 U.S. at 211, 107 S.Ct. at 1089, 94 L.Ed.2d at 256.

■ While hunting is not against Alaska's public policy, unregulated hunting is. This point of law was clarified by the Alaska Supreme Court in *State v. Eluska*, 724 P.2d 514 (Alaska 1986). In *Eluska*, the court construed AS 16.05.920(a), which declares:

> Unless permitted by [AS 16.05] or by regulation adopted under [this chapter], a person may not take, possess, transport, sell, offer to sell, purchase, or offer to purchase fish, game, or marine aquatic plants, or any part of fish, game, or aquatic plants, or a nest or egg of fish or game.

The defendant in *Eluska* shot a deer on Kodiak Island in May (that is, out of season). He defended by asserting that he was engaged in subsistence hunting. The supreme court declared that, under AS 16.05.920(a), no one may engage in any form of hunting or fishing in Alaska unless there is a statute or regulation that expressly permits it:

> This section has been part of Alaska's fish and game code since the early days of statehood. Art. I, ch. 94, § 28 SLA 1959. It is phrased negatively: *"unless* permitted," no one has a right to take or possess Alaskan game. No regulation authorized David Eluska to take a deer in Kodiak in May, and his taking of the deer was, therefore, unlawful.

*Eluska*, 724 P.2d at 515. Jones is in the same position as the defendant in *Eluska*.

Jones hunted deer when there was no statute or regulation permitting such hunting.

From a public policy standpoint, unregulated hunting is significantly different from the unregulated gambling that was discussed in *Cabazon Band*. Large-scale unregulated hunting can ultimately destroy the practice of hunting itself (by destroying the game population). A ruling in Jones's favor would create a checkerboard of small enclaves where the State could not regulate hunting and fishing. Alaska Natives are not, and never have been, confined to reservations.[2] Thus, Native allotment parcels are found throughout the State. (For instance, as noted above, Littlefield's five-acre parcel lies a few miles north of the city of Sitka.) If the State could not regulate hunting and fishing on Native allotment parcels, the result would be islands of non-regulation spread throughout practically every game-management unit in the state—leading to disruption and endangerment of the State's efforts to protect and conserve game resources.

For these reasons, we conclude that the State of Alaska's regulation of hunting is "criminal" for purposes of 18 U.S.C. § 1162(a) (under the test announced in *Cabazon Band*), and that therefore the State has jurisdiction to enforce its hunting and fishing laws within any and all Indian country within this state. Thus, regardless of whether Littlefield's Native allotment qualifies as "Indian country" under 18 U.S.C. § 1151, Jones could lawfully be prosecuted for engaging in hunting that was not specifically permitted by Alaska statute or regulation.

### Jones's Other Claims

■ Jones asserts, and the State concedes, that he shot the deer to obtain food, and that deer hunting is a traditional means by which Natives in the Sitka area obtained sustenance. Jones claims that the State of Alaska has no power to regulate traditional subsistence hunting on federal public lands—that this power was taken away by the Alaska National Interest Lands Conservation Act (ANILCA).

We do not believe that the Native allotment at issue here is "federal public land". Pursuant to the terms of the Native Allotment Act (as amended in 1956), Jones's uncle (Littlefield) received a homestead patent to the five-acre parcel in 1970. Jones argues that, because the Secretary of the Interior has the right to veto a sale of this parcel (see footnote 1), the federal government retains sufficient interest in the parcel to make it "federal land". We find this contention dubious, but we need not resolve this issue. In *Totemoff v. State*, 905 P.2d 954 (Alaska 1995), the Alaska Supreme Court held that the State could regulate hunting on federal public land. The supreme court recognized that ANILCA guarantees rural residents the right to engage in "customary and traditional *uses* ... of wild, renewable resources", 16 U.S.C. § 3113 (emphasis by the court), but the court held that ANILCA does not bar the State from exercising its traditional authority to regulate the method and means of hunting, even on federal lands within the state, so long as the State regulations do not conflict with federal law. 905 P.2d at 958–961, 973. Jones cites no provision of federal law that conflicts with the State's establishment of the deer hunting season in Sitka.

■ Jones contends that his uncle's Native allotment is land held in trust by the federal government. Jones's argument confuses Indian allotments with Alaska Native allotments. Indian allotments are owned by the federal government and held in trust for the benefit of the named Indian until the trust period expires. Native allotments are deeded as homesteads to the Alaska Native. Moreover, as explained in the previous paragraph, even if the Littlefield parcel were deemed federal land, the State of Alaska would still be able to enforce its game laws on the parcel. *Totemoff, supra.*

■ Jones claims that Section 4 of the Alaska Statehood Act precludes the State of

---

**2.** "There was never an attempt in Alaska to isolate Indians on reservations. Very few were ever created, and the purpose of these, in contrast to many in other States, was not to confine the Indians for the protection of the white settlers but to safeguard the Indians against exploitation." *Metlakatla Indian Community v. Egan*, 369 U.S. 45, 51, 82 S.Ct. 552, 557, 7 L.Ed.2d 562, 567 (1962).

Alaska from enforcing its hunting regulations against Natives. In Section 4, the State of Alaska "disclaim[ed] all right and title … to any lands or other property (including fishing rights), the right or title to which may be held by any Indians, Eskimos, or Aleuts" and recognized that "all such lands or other property … held by said natives … shall be and remain under the absolute jurisdiction and control of the United States". Corresponding language is found in Article XII, Section 12 of the Alaska Constitution. Jones asserts that, under this provision, Littlefield's Native allotment parcel (and any hunting conducted by Natives on that parcel) is exempted from State control.

■ However, the United States Supreme Court has rejected Jones's broad reading of this language. As discussed above, the Court has construed Section 4 to allow the State of Alaska to regulate off-reservation hunting and fishing unless Congress enacts a statute to limit the state's authority. *Organized Village of Kake v. Egan*, 369 U.S. 60, 71, 82 S.Ct. 562, 568, 7 L.Ed.2d 573, 581 (1962).

■ Jones contends that he and his uncle, as Natives, have aboriginal hunting rights that the State of Alaska must respect. Jones's claim is foreclosed by Section 4 of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1603. This statute provides, in pertinent part:

(a) All prior conveyances of public land and water areas in Alaska, or any interest therein, pursuant to Federal law, … shall be regarded as an extinguishment of the aboriginal title thereto, if any.

(b) All aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy, … including any aboriginal hunting and fishing rights that may exist, are hereby extinguished.

Under paragraph (a) of this section, it appears that the conveyance of the Native allotment to Littlefield in 1970 extinguished any aboriginal title that he or Jones could claim. Further, paragraph (b) extinguished Jones's aboriginal rights even if paragraph (a) did not. *See United States v. Atlantic Richfield Co.*, 435 F.Supp. 1009, 1022, 1029 (D.Alaska 1977), *aff'd*, 612 F.2d 1132, 1134 (9th Cir. 1980); *Paug–Vik, Inc. v. Wards Cove Packing Co.*, 633 P.2d 1015, 1020 (Alaska 1981).

### Conclusion

The judgement of the district court is AFFIRMED.