Marvin L. CHARLES Sr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–10202.

Court of Appeals of Alaska.

June 11, 2010.

Glenda J. Kerry, Law Office of Glenda J. Kerry, Girdwood, for the Appellant.

Stephen R. West, District Attorney, Ketchikan, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Marvin L. Charles Sr. was convicted of violating several state hunting regulations related to the taking of does on Prince of Wales Island. Charles argues that he was entitled to an evidentiary hearing in district court to show that the hunting regulations were invalid because they conflicted with federal law requiring a priority for subsistence hunting. We uphold the district court's decision to deny the hearing because Charles did not raise any factual dispute about the validity of the regulations.

### Facts and proceedings

Charles was convicted of five counts of unlawful possession or transportation of

game,[1] four counts of unlawful possession or transportation of game that had evidence of sex removed,[2] and hunting without the required harvest ticket.[3] Charles's violations all involved deer shot on federal land on Prince of Wales Island in September 2006. Only antlered bucks could be hunted on Prince of Wales Island at the time.[4] However, Charles admitted that at least three of the deer that were taken by his hunting party were does.[5]

Before trial, Charles moved for dismissal of the charges, arguing that the state regulations conflicted with the subsistence priority mandated by the Alaska National Interest Lands Conservation Act of 1980 (ANILCA).[6] Charles argued that the state regulations were defective because they did not establish a priority for subsistence use as required by ANILCA, and therefore encouraged depletion of a resource "that Congress specifically directed be used for the primary purpose of non-wasteful subsistence." Charles asserted that non-subsistence hunters had decreased the population of bucks, exerting "an ever-increasing pressure on subsistence users' efforts to feed themselves and their families by means of their traditional subsistence way of life."

Charles also asked for an evidentiary hearing to establish that he was entitled to defend against the charges at trial by showing that (1) the deer were taken for subsistence purposes and (2) the state regulations were unreasonable because they failed to provide him an opportunity to satisfy his subsistence needs.

Superior Court Judge Trevor N. Stephens, sitting in the district court, denied the motion to dismiss. Relying on *Totemoff v. State*,[7] Judge Stephens ruled that ANILCA did not preempt the state from regulating hunting on federal lands in Alaska as long as the regulations did not conflict with federal law. He ruled that the state regulation allowing hunting by non-subsistence hunters on Prince of Wales Island did not conflict with federal law because the responsible federal agencies had also not restricted non-subsistence hunting in the area. Judge Stephens also found that Charles had not offered any evidence to show that there was a dangerously skewed buck-to-doe ratio on Prince of Wales Island, or that there was no valid reason under ANILCA to limit the hunting of does.

Charles filed a motion to reconsider, again requesting an evidentiary hearing. In his motion to reconsider, Charles conceded that the pertinent federal regulations governing

1. 5 Alaska Administrative Code (AAC) 92.140(a) provides:
   No person may possess, transport, give, receive, or barter game or parts of game that the person knows or should know were taken in violation of AS 16 or a regulation adopted under AS 16.

2. 5 AAC 92.150(b) provides:
   If the taking of a big game animal, except sheep, is restricted to one sex, a person may not possess or transport the carcass of an animal unless sufficient portions of the external sex organs remain attached to indicate conclusively the sex of the animal, except that antlers are considered proof of sex for a deer if the antlers are naturally attached to an entire carcass, with or without the viscera; however, this section does not apply to the carcass of a big game animal that has been cut and placed in storage or otherwise prepared for consumption upon arrival at the location where it is to be consumed.

3. 5 AAC 92.010(f) provides in pertinent part:
   [A] person may not hunt deer, except in a permit hunt, unless the person has in possession a deer harvest ticket[.]

4. 5 AAC 85.030(a)(2) provides that, between August 1 and December 31, the bag limit for Prince of Wales Island (Southeast Region Game Management Unit 2) is four bucks. *See* 5 AAC 92.450(2) (describing Game Management Unit 2). Federal regulations provide that only bucks may be taken in Unit 2 between July 24 and October 15. 36 C.F.R. § 242.26(n)(2); 50 C.F.R. § 100.26(n)(2).

5. *See* AS 16.05.920(a) (a person may not take any game unless permitted by statute or regulation).

6. Congress intended "to provide the opportunity for rural residents engaged in a subsistence way of life to do so." 16 U.S.C. § 3112(1). Subsistence harvest of fish and wildlife on public lands must be accorded priority over the taking of fish and wildlife for other purposes. 16 U.S.C. § 3114. The Secretaries of Interior and Agriculture are required to promulgate regulations necessary to implement this priority. 16 U.S.C. § 3124.

7. 905 P.2d 954 (Alaska 1995).

hunting on Prince of Wales Island almost mirrored state regulations. He clarified that his claim was that the federal and state regulations *both* deprived him of ANILCA's subsistence priority by placing him on equal footing with non-subsistence hunters. He asserted that a hearing "would show that the pressure put on game by non-subsistence users has, in fact[,] been recognized by the Federal Subsistence Board, but that it has not been adequately addressed to preserve [his] subsistence hunting needs."

In denying the motion to reconsider, Judge Stephens acknowledged that Charles had the right to challenge the validity of the regulations he was charged with violating. But he noted that Charles appeared to concede that the Federal Subsistence Board had considered the concerns he was raising and had decided not to further restrict deer hunting on Prince of Wales Island. He concluded that Charles was attempting to raise what was "in essence an appeal of an administrative decision."

At trial, Charles raised the affirmative defense of necessity with respect to all the charges except the charge of hunting without a harvest ticket, arguing that the deer were taken "due to dire emergency." [8] He testified that he went on an overnight fishing trip with relatives and friends and was trapped on Prince of Wales Island by rough seas. He testified that the deer were shot when his fishing party ran out of food. The jury rejected that defense and convicted Charles of all counts. He now appeals.

### Discussion

■ Charles has not explained how two of the regulations he was convicted of violating—the regulations requiring hunters to have deer harvest tickets and to leave the deer's sex identification attached—interfered with his subsistence rights. Charles has therefore waived his challenge to those regulations by inadequate briefing.[9]

This leaves the five counts of unlawfully possessing or transporting game. The jury was instructed that those five counts could be proved in two ways: the State could prove that Charles possessed or transported deer that were taken without a deer harvest ticket, or the State could prove that Charles possessed or transported does that were taken in violation of the harvest limit that allowed only the taking of antlered bucks. The jury did not specify which theory it relied on to convict Charles. Therefore, we are required to reverse Charles's convictions on those five counts if he establishes that the harvest limit is invalid.[10]

Charles particularly challenges the district court's decision to deny his motion without an evidentiary hearing. The entitlement to a hearing is generally governed by Alaska Criminal Rule 42. A moving party must include a "detailed statement of material facts" and all "documentary evidence" that supports a motion.[11] The court is not required to hold a hearing on a motion if "material issues of fact are not presented in the pleadings."[12]

*Was Charles entitled to a hearing to establish a subsistence defense?*

■ Charles's first claim is that he was entitled to raise a subsistence defense to the charges against him, and that Judge Stephens should have granted him an evidentiary hearing to present evidence in support of that defense. In support of this claim,

---

**8.** *See* AS 16.05.930(b) ("This chapter does not prohibit a person from taking fish or game during the closed season, in case of dire emergency, as defined by regulation adopted by the appropriate board."); 5 AAC 92.990(a)(13) (defining "dire emergency" to mean a situation in which the person is (A) in a remote area; (B) involuntarily experiencing an absence of food required to sustain life; (C) facing a high risk of death or serious and permanent health problems if wild game food is not immediately taken; and (D) cannot expect to obtain other food sources in time).

**9.** *See Petersen v. Mutual Life Ins. Co.,* 803 P.2d 406, 410 (Alaska 1990).

**10.** *See Vigue v. State,* 987 P.2d 204, 210 (Alaska App.1999).

**11.** Alaska R.Crim. P. 42(b)(1) & (2).

**12.** Alaska R.Crim. P. 42(e)(3).

Charles cites the Ninth Circuit's decision in *United States v. Alexander*.[13]

*Alexander* involved defendants convicted in federal court for the interstate transport of herring roe taken or sold in violation of Alaska law.[14] The government claimed that the defendants had violated the regulation that prohibited the sale of herring roe caught for subsistence, and the state regulation that set catch limits for herring roe.[15] On appeal to the Ninth Circuit, the defendants argued that those state regulations were invalid because they interfered with "customary trade," a subsistence use protected by ANILCA.[16] The Ninth Circuit concluded that the sale of herring roe was a protected subsistence use that fell within ANILCA's definition of "customary trade," and that Alaska's blanket prohibition on such sales conflicted with ANILCA.[17] The court did not strike down the regulation, however, instead holding that the defendants would be entitled to acquittal if they proved by a preponderance of the evidence that they were engaged in "customary trade" under ANILCA.[18]

*Alexander* is not binding on this court.[19] But even if it were, it would only control the cases in which a state regulation interfered with "customary trade" as defined in ANILCA.[20] Charles has not alleged that the regulations at issue in his case impeded customary trade, or that state regulators failed to take proper account of customary trade when they set the harvest limit for deer on Prince of Wales Island.

If anything, *Alexander* suggests that Charles was not entitled to an evidentiary hearing. The defendants in *Alexander* also challenged the state regulation establishing harvest limits for herring roe, arguing that the Board of Fisheries had neglected to allow for sales made in customary trade when it established the harvest limits.[21] The Ninth Circuit declined to consider that claim because the defendants had presented no evidence of what was considered by the Board of Fisheries when it adopted the harvest limits nor any record of the Board's proceedings.[22] Likewise in this case, Charles offered no record of administrative proceedings and no evidence of what was considered by the Board of Game when it adopted the harvest limit that prohibited the taking of does. We conclude that Charles was not entitled to a hearing under the reasoning of *Alexander*.

Charles may be arguing more broadly that ANILCA entitled him to defend against the criminal charges at trial by showing that (1) the deer were shot for non-wasteful subsistence purposes and (2) the harvest limit was unreasonable because it did not provide him an opportunity to satisfy his subsistence needs. But such a defense is precluded by *State v. Eluska*.[23] In *Eluska*, the defendant killed a deer out of season and was charged with possessing or transporting game taken in violation of state hunting laws.[24] In his defense, he claimed that the Board's regulations failed to differentiate between subsistence hunting and other hunting as required by statute.[25]

The Alaska Supreme Court ruled that Eluska had no right to hunt for subsistence in the absence of a regulation authorizing such hunting.[26] The supreme court rejected the view that "an agency's failure to act in

**13.** 938 F.2d 942 (9th Cir.1991).

**14.** *Id.* at 945.

**15.** *Id.* at 945–46.

**16.** *Id.* at 945.

**17.** *Id.* at 946.

**18.** *Id.* at 948.

**19.** *Totemoff,* 905 P.2d at 963 (noting that Alaska courts are not bound by decisions of federal courts other than the United States Supreme Court on questions of federal law) (citing *In re F.P.,* 843 P.2d 1214, 1215 n. 1 (Alaska 1992)).

**20.** *See Alexander,* 938 F.2d at 948.

**21.** *Id.* at 946–47.

**22.** *Id.*

**23.** 724 P.2d 514 (Alaska 1986).

**24.** *Id.* at 514.

**25.** *Id.*

**26.** *Id.* at 516.

accordance with a statutory requirement means that those who are regulated by the agency may act as though they were not regulated." [27] Based on *Eluska*, we conclude that Charles was not entitled to defend against these charges by asserting that the does were shot for subsistence purposes.

### *Was Charles entitled to a hearing to challenge the validity of the state regulations?*

■ The remaining question is whether Charles was entitled to an evidentiary hearing to show that the state regulation was inconsistent with the subsistence priority mandated by ANILCA. In *Totemoff*, the supreme court held that Congress in enacting ANILCA only preempted enforcement of state hunting laws when there was "actual conflict" between state and federal law.[28] There is an actual conflict between state and federal law "if the state law conflicts with the federal law to the extent that (a) it is impossible to comply simultaneously with both or (b) the state regulation obstructs the execution of the purpose of the federal regulation." [29]

In *Totemoff*, the defendant was charged with violating a state regulation that prohibited hunting with the aid of a spotlight.[30] There was no direct conflict between the state's anti-spotlighting regulation and any federal statute or regulation because a federal subsistence hunting regulation also prohibited taking game with the aid of a spotlight.[31]

■ There is likewise no actual conflict with ANILCA in this case because Charles's conduct was illegal under both state and federal hunting regulations. Alaska's regulation authorized deer hunting on Prince of Wales Island for residents and nonresidents from August 1 to December 31 and set a

harvest limit of four bucks.[32] Federal subsistence regulations authorized rural Alaska residents to hunt deer on Prince of Wales Island from July 24 to December 31 and set a limit of five deer, but only one of those deer could be an antlerless deer, and the antlerless deer had to be taken between October 15 and December 31.[33] Charles's conduct took place in September 2006, at a time when both state and federal regulations prohibited the hunting of does.

■ Charles nevertheless claims that the state regulation conflicts with ANILCA because nonresidents have depleted the buck population, leaving too few bucks to meet his subsistence hunting needs. He asserts that "pressure put on game by non-subsistence users has, in fact[,] been recognized by the Federal Subsistence Board, but that it has not been adequately addressed to preserve Mr. Charles's subsistence needs." He argues that these assertions created disputed issues of material fact with respect to the validity of the state and federal regulations and that he was entitled to a hearing to resolve this dispute.

In *Totemoff*, the supreme court clarified that *Eluska* did not prevent a subsistence hunter from arguing that the regulation he was charged with violating was invalid.[34] In this case, Charles asserted in general terms that the regulation gave inadequate priority to subsistence needs, and that the Federal Subsistence Board was aware of the pressure put on game by non-subsistence users but had not adequately addressed the problem. But Charles did not provide the court with any record of administrative proceedings to show that state or federal regulators failed to follow required procedures in enacting the regulation, or that the regulation at its incep-

**27.** *Id.*

**28.** 905 P.2d at 960–61.

**29.** *State, Dep't of Commerce v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 632 (Alaska 2007).

**30.** 905 P.2d at 957 (citing 5 AAC 92.080(7)).

**31.** *Id.* at 960 (citing 36 C.F.R. § 242.23(b)(1)(vii) (1990)).

**32.** AS 16.05.920(a) (prohibiting the taking of game absent a regulation authorizing the taking); 5 AAC 85.030(a)(1) (setting bag limit in Game Unit 2).

**33.** 36 C.F.R. § 242.26(n)(2); 50 C.F.R. § 100.26(n)(2); *see* Subsistence Taking of Fish and Wildlife Regulations, 71 Fed.Reg. 37642–01, 37662 (June 30, 2006).

**34.** *Totemoff*, 905 P.2d at 969.

tion was otherwise arbitrary, unreasonable, or an abuse of discretion.[35] In other words, Charles's assertions, without more, did not establish that he could be entitled to relief.[36] And after Judge Stephens found that Charles's offer of proof was deficient, Charles made no effort to correct that deficiency when he filed his motion to reconsider. In the absence of any proof to the contrary, the district court was obliged to presume that the regulations were valid.[37]

Our conclusion is consistent with other decisions holding that individuals are not free to break laws simply because they believe their conduct should be legal. For instance, a person cannot defend against a charge of driving without a license by asserting that the government wrongly denied the license; the defendant must challenge the denial of the license in appropriate civil or administrative proceedings.[38] Similarly, a person cannot defend against a charge of violating a restraining order by asserting that there were insufficient grounds for the court to issue the order.[39] And a person cannot defend against a charge of illegal hunting by asserting that state or federal regulators made the wrong judgments when they set harvest limits for game.

Managing game for subsistence and other competing uses is a complex task that requires considerable expertise. The district court correctly recognized that it had no authority to substitute its judgment for that of the agencies involved with respect to the wisdom or efficacy of these regulations.[40]

### Conclusion

We therefore AFFIRM the district court judgment.

---

**35.** *State v. Morry*, 836 P.2d 358, 362–64 & 362 n. 3 (Alaska 1992); *see also Alexander*, 938 F.2d at 947 (rejecting the claim that a state regulation establishing catch limits for herring roe interfered with ANILCA because the defendants had presented no evidence of "what was or was not considered by the Board of Fisheries" when it adopted the catch limits, and had provided no record of the Board's proceedings).

**36.** *See Marshall v. State*, 198 P.3d 567, 572–73 (Alaska App.2008) (explaining that an evidentiary hearing is not required unless the moving party files affidavits or other evidence showing that he may be entitled to relief).

MANNHEIMER, Judge, concurring.

I write separately to emphasize a key aspect of our analysis of this case: our interpretation of the Alaska Supreme Court's decision in *Totemoff v. State*, 905 P.2d 954 (Alaska 1995).

In the final portion of its opinion in *Totemoff*, 905 P.2d at 969–973, the supreme court addressed the question of whether a defendant who is charged with violating a hunting regulation can defend against the charge by attacking the validity of the regulation. The supreme court concluded that a defendant can properly assert that the regulation is *procedurally* invalid—*i.e.*, that the proceedings leading up to the enactment of the regulation were irregular in one or more respects. 905 P.2d at 969, 972–73. But at the same time, the supreme court reaffirmed its earlier decision in *State v. Eluska*, 724 P.2d 514, 516 (Alaska 1986), that a defendant is not entitled to defend against a charge of illegal hunting by asserting that the unlawful act of hunting was done for subsistence purposes. 905 P.2d at 969–971.

See also AS 16.05.259, which states: "In a prosecution for the taking of fish or game in violation of a statute or regulation, it is not a defense that the taking was done for subsistence uses." In *Totemoff*, the supreme court interpreted this statute as codifying the court's decision in *Eluska* "that unauthorized hunting does not become lawful because it is subsistence hunting". 905 P.2d at 970.

In *Totemoff*, the defendant argued that the regulation he was charged with violating (a

---

**37.** *See State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 425 (Alaska 1982) ("AS 44.62.100(a) establishes a rebuttable presumption that the procedural requirements for the promulgation of administrative regulations have been satisfied.").

**38.** *See Tenison v. State*, 38 P.3d 535, 538 (Alaska App.2001).

**39.** *See Jacko v. State*, 981 P.2d 1075, 1077 (Alaska App.1999).

**40.** *See Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 978 (Alaska 2007); *Meier v. State, Bd. of Fisheries*, 739 P.2d 172, 174 (Alaska 1987).

regulation that prohibited the hunting of deer with the aid of a spotlight) was procedurally invalid because the Board of Game held no separate hearing to determine whether the prohibition on the use of spotlights should apply to subsistence hunting. 905 P.2d at 971–72. The supreme court rejected the contention that the Board was required to hold a separate hearing on subsistence issues, and the court then noted that Totemoff had offered no evidence that the Board of Game failed to consider subsistence uses during the administrative proceedings leading up to the adoption of the regulation. 905 P.2d at 972–73. Given the lack of evidence on this point, and given the presumption of regularity, the supreme court held that Totemoff had failed to establish even a prima facie case that the regulation was procedurally invalid. *Ibid.*

Returning to the facts of Charles's case, Charles offered no evidence that the Alaska Board of Game or the Federal Subsistence Board failed to consider subsistence uses when they set the limits on deer hunting on Prince of Wales Island. Rather, as Judge Bolger's lead opinion points out, Charles apparently concedes the opposite. In his district court pleadings, Charles declared that "[even though] the pressure put on game by non-subsistence [hunters] has … been recognized by the Federal Subsistence Board, [the Board] has not … adequately … preserve[d] Mr. Charles' subsistence hunting needs".

In other words, Charles did not assert that the Board of Game's adoption of the deer-hunting regulation was procedurally invalid, or that the regulation lacked any reasonable relation to the Board's areas of regulatory authority defined in AS 16.05.255–270. Instead, Charles argued that the Board reached the wrong conclusion when it weighed the needs of subsistence hunters against the need to husband the deer population. Charles wanted the district court to hold a hearing, not for the purpose of showing that there was any legal irregularity in the Board's enactment of the regulation, but rather for the purpose of second-guessing the Board's decision on issues of game management. *Totemoff* and *Eluska* hold that this proposed "defense" is not allowed.